**FILED**
**CLERK**

12/28/2015 12:36 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
ROSEMARY E. FLEMING-HOGAN,

                Plaintiff,

     -against-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.
---------------------------------X

MEMORANDUM & ORDER
14-CV-1891(JS)

APPEARANCES
For Plaintiff:       Charles E. Binder, Esq.
                   Law Offices of Harry J. Binder and
                    Charles E. Binder, P.C.
                   60 East 42nd Street, Suite 520
                   New York, NY 10165

For Defendant:       Robert W. Schumacher, II, Esq.
                   United States Attorney's Office
                   Eastern District of New York
                   610 Federal Plaza
                   Central Islip, New York 11722

SEYBERT, District Judge:

        Plaintiff Rosemary E. Fleming-Hogan ("Plaintiff") commenced this action pursuant to Section 205(g) of the Social Securities Act, as amended, 42 U.S.C. § 405(g), challenging defendant, the Commissioner of Social Security's ("the Commissioner"), denial of her application for disability insurance benefits. Presently before the Court are Plaintiff's and Commissioner's motions for judgment on the pleadings (Docket Entries 13, 15.) For the following reasons, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

<u>BACKGROUND</u>

Plaintiff filed for Social Security Disability benefits on July 6, 2011, alleging that she has been disabled since October 1, 2009. (R. at 117-20.) Plaintiff attributes her disability to: spinal stenosis, fibromyalgia, high blood pressure, hypertension, goiter, gout, and arthritis. (R. at 142.)

After her application for Social Security Disability benefits was denied on November 16, 2011, Plaintiff requested a hearing before an administrative law judge ("ALJ") on December 2, 2011. (R. at 61-65, 67-68.) The hearing took place on September 5, 2012 before ALJ Seymour Rayner. (R. at 35-58.)

On October 11, 2012, the ALJ issued his decision finding that Plaintiff is not disabled. (R. at 22-30.) On November 26, 2012, Plaintiff petitioned the Appeals Counsel to review the ALJ's decision and submitted additional evidence in support of her request. (R. at 21.) On January 22, 2014, the Appeals Council denied Plaintiff's request. (R. at 1-7.)

The Court's review of the administrative record in this case will proceed as follows: <u>first</u>, the Court will summarize the relevant evidence presented to the ALJ; <u>second</u>, the Court will review the ALJ's findings and conclusions; <u>third</u>, the Court will summarize the additional evidence submitted to the Appeals Council; and <u>finally</u>, the Court will review the Appeals Council's decision.

I.   Evidence Presented to the ALJ

     A.   Non-Medical Evidence

          Plaintiff was born in 1960.  (R. at 118.)  She completed high school and some vocational school training in licensed practical nursing.  (R. at 38.)  Plaintiff was employed from September 1994 to June 2008 as a teacher, and in 2011 she worked for a homecare company for one week.  (R. at 39-40, 134-35; 143-44).  She is married and lives with her mother, her husband, and their three children.  (R. at 44-45.)

          Plaintiff testified that she stopped working on June 30, 2008, after her job ended.  (R. at 142.)  Although she did not stop working because of her condition, Plaintiff claims that in October 2009, her condition became too severe for her to resume working.  (R. at 142.)  In a Disability Report Plaintiff wrote that the reason for her disability was spinal stenosis, fibromyalgia, hypertension, goiter, gout, and arthritis.  (R. at 142.)  When asked why she could not work, Plaintiff testified as follows: "Basically it's the pain, the numbness, [ ] just the aches and pains.  It just becomes difficult to move and to function." (R. at 42.)  Plaintiff also testified that she has "been diagnosed with fibromyalgia, spinal stenosis, high blood pressure, gout." (R. at 43.)

          Within a Function Report that Plaintiff filled out on September, 26, 2011, Plaintiff wrote that she had pain in her neck,

shoulders, lower back, left leg, and left heel for five years, and that her symptoms affected her activities for three years. (R. at 170-71.) Plaintiff complained of deep muscle soreness, burning pain, sharp stabbing pain, and numbness. (R. at 170.) She stated she took medication that helped, but did not eliminate her pain, and that these medications caused drowsiness, dizziness, and blurred vision. (R. at 171-72.) Plaintiff stated she could only lift five pounds, stand for five minutes and sit for ten minutes, and was not able to walk for more than five minutes without stopping for a 20-25 minute break. (R. at 167-69.) Plaintiff recorded that she could not climb stairs, kneel, squat, reach high, or use her hands for extended periods. (R. at 168.)

Plaintiff reported that she was able to independently shower, eat meals, feed her cat, watch television, take medications, play games on the computer, crochet, and read. (R. at 163, 166.) Plaintiff explained that she could make her bed and that when seated, she could iron, but that her family took care of the housecleaning and repairs. (R. at 163-165.) She reports no difficulty hearing, speaking, paying attention, finishing what she started, following directions, working with others, and handling stress. (R. at 168-170.) Plaintiff is able to pay bills, count change, and handle a savings account. (R. at 166.) Plaintiff wrote that she could leave her home to shop for food, clothing, and books, although she could not drive and someone had to go with

her to carry her packages.  (R. at 165-66.)  She also goes to the doctor's office, pharmacy, and grocery store monthly and to visit family weekly.  (R. at 165-67.)

B.  Medical Evidence

1.  South Nassau Internal Medicine Associates

Beginning in May 2006, Plaintiff received treatment at South Nassau Internal Medicine Associates.  (R. at 277.)  On May 18, 2006 Plaintiff was diagnosed with multinodular nontoxic goiter and osteoarthritis.  (R. at 277; Pl.'s Br., Docket Entry 16, at 1.)  On September 2, 2009, Plaintiff saw Dr. Eric Blacher complaining of numbness of the lower back radiating into the left thigh.  (R. at 275; Pl.'s Br. at 1.)  Plaintiff was diagnosed with back pain and anemia.  (R. at 275, 338; Pl.'s Br. at 1-2.)  On October 14, 2009, an MRI of the lumbar spine showed degenerative changes of the spine, mild central canal stenosis, and moderate bilateral foraminal narrowing.  (R. at 259-260.)

On May 4, 2010, a sonogram showed a diffusly enlarged thyroid gland with multiple bilateral nodules consistent with multinodular goiter. (R. at 285.)  This was confirmed by a thyroid uptake scan on May 19, 2010.  (R. at 283.)  On June 7, 2010, Plaintiff complained of body aches, fatigue, thinning hair, dry mouth, and fullness of her neck on the left.  (R. at 269; Pl.'s Br. at 2.)  On December 17, 2010, Plaintiff described hip and left arm pain.  (R. at 268; Pl.'s Br. at 2.)  Plaintiff was diagnosed

with left lower extremity superficial phlebitis, hypertension, a multinodular thyroid goiter, and fibromyalgia.  Id.  On January 20, 2011, Plaintiff returned, complaining that the room was spinning, and was diagnosed with hypertension and vertigo.  (R. at 266; Pl.'s Br. at 2.)  On February 3, 2011, Plaintiff complained of back pain and leg swelling.  (R. at 265; Pl.'s Br. at 2.)  On April 25, 2011, she reported aches and pains all over and poor sleep.  (R. at 353; Pl.'s Br. at 2.)

    2.   Gary Meredith, M.D.

Gary Meredith, M.D., a rheumatologist, treated Plaintiff "from approximately 2002 through 2007 although she was seen quite intermittently over those years and there was a stretch between 2004 and 2007 when she was not seen at all."  (R. at 261.)  Dr. Meredith stated that Plaintiff complained of generalized joint pain in the shoulders, elbows, hands, wrists, knees, ankles, and multiple other locations over the past year.  (R. at 261.)

A physical examination performed by Dr. Meredith in 2011 revealed limited neck extension, significant limited motion in both shoulders, fair range of motion in her back, significant crepitus in the knees, and trigger point tenderness.  (R. at 261-62.)  Plaintiff's hips had fair movement, and her ankles and feet were normal. (R. at 261-62.)   Dr. Meredith stated that Plaintiff suffered from osteoarthritis and fibrolmyalgia.  (R. at 262.)

On June 23, 2011, Plaintiff was seen by Dr. Meredith for a visit regarding shoulders, elbows, and wrist puffiness. (R. at 249; Pl.'s Br. at 3.) Dr. Meredith diagnosed Plaintiff with achilles tendonitis and possible gout. Id. On July 1, 2011, Plaintiff reported a swollen heel and was advised to take Aleve. (R. at 248, 305.) On July 21, 2011, Plaintiff complained of mild pain in her left foot and was diagnosed with Achilles tendonitis secondary to gout, however, Dr. Meredith reported that Plaintiff had good range of motion in her hips and knees. (R. at 248, 305.)

On September 6, 2011, Dr. Meredith noted Plaintiff still had problematic gout, although there was less pain with medication, and reported that Plaintiff had fair range of motion in her shoulders and elbows and good range of motion in her hips and knees, despite swelling, and painful range of motion in her left ankle. (R. at 247.) As of September 27, 2011, Plaintiff's medication included Norvasc, Lisinopril, Atenolol, Gabapentin, Colcrys, Advil, and Pepcid. (R. at 357.)

On October 6, 2011, Dr. Meredith reported that Plaintiff had pain in her neck and down her back. (R. at 301.) However, Plaintiff did have fair range of motion in her back and hips, although there were mild limitations in her neck and trace ankle edema. Id. On December 1, 2011, Plaintiff complained that her leg pain and sciatica had not improved. (R. at 306; Pl.'s Br. at 4.) Dr. Meredith noted that Plaintiff had limited range of motion

in her hips and knees, but her shoulders and elbows were within normal limits, with no active synovitis in her hands or wrists. (R. at 306.) On February 2, 2012, Dr. Meredith saw Plaintiff, who complained of a gout flare-up in her left foot. (R. at 306.) Plaintiff had tenderness in her left heel, but a good range of motion in her shoulders, hips, and knees. (R. at 306.) Her elbows were within normal limits, and her examination was otherwise unremarkable. (R. at 306.)

Dr. Meredith completed a Multiple Impairment Questionnaire on February 6, 2012. (R. at 204-211.) Plaintiff's primary symptoms were joint pain and fatigue. (R. at 205.) Dr. Meredith rated Plaintiff's pain as a six out of ten and her fatigue as an eight out of ten. (R. at 206.) Dr. Meredith determined that Plaintiff was able to sit for three hour total and stand or walk two hours total in an eight hour workday. Id. When sitting, Dr. Meredith determined that Plaintiff needed to get up and move around every hour and not sit again for thirty minutes. (R. at 206-207.) Dr. Meredith assessed that Plaintiff could frequently lift objects weighing up to ten pounds and occasionally lift objects weighing between ten and twenty pounds. (R. at 207.) Plaintiff could frequently carry objects weighing up to five pounds, and occasionally carry objects weighing between five and ten pounds, but had significant limitations in performing repetitive tasks such as reaching, handling, fingering, or

lifting.  (R. at 207.)  Dr. Meredith estimated that Plaintiff would be absent from work, on average, more than three times a month as a result of her impairments or treatment, and needed a job that did not involve pushing, pulling, kneeling, bending, or stooping and avoid humidity and heights.  (R. at 210.)  He stated that Plaintiff would need to take 15 minute breaks every one to two hours.  (R. at 209.)  Dr. Meredith recorded that Plaintiff's symptoms would increase if she were placed in a competitive work environment and that her symptoms periodically were severe enough to interfere with her attention and concentration.  (R. at 208-09.)  Dr. Meredith believed, however, that Plaintiff was capable of being in high stress work.  (R. at 209.)  During a March 1, 2012 visit, Plaintiff complained of bilateral neck spasms and Dr. Meredith diagnosed her with fibromyalgia, osteoarthritis, and gout.  (R. at 307; Pl.'s Br. at 5.)  Dr. Meredith noted that Plaintiff had a good range of motion in the shoulders, hips, and knees, and fair movement in the neck.  Id.

In a narrative report dated March 2, 2012, Dr. Meredith noted that when he saw the Plaintiff in 2011, she had generalized joint pain involving the shoulders, elbows, hands, wrists, knees, and ankles.  (R. at 220.)  In addition, he noted that Plaintiff suffered from poor sleep.  (R. at 220.)  His examination revealed slightly decreased motion in the neck with fullness and limitation, fair range of motion in the shoulders, limited motion in the back,

fair movement in the hips and knees, intermittently positive straight leg raising, intermittent pain and swelling of the l1ft heel, and significant trigger point tenderness. (R. at 220.) Dr. Meredith noted Plaintiff had longstanding hypertension, spinal stenosis, and a thyroid goiter issues. (R. at 220.) Dr. Meredith also noted that Plaintiff continued to suffer from fibromyalgia, osteoarthritis, and gout. (R. at 220.) He further classified Plaintiff as "disabled" and stated that she was unable to return to her job as an elementary school teacher because of her physical limitations. (R. at 221.)

On April 26, 2012, Plaintiff complained that her upper right arm was producing pain, and painful motion in the right shoulder. Dr. Meredith again diagnosed Plaintiff with fibromyalgia, osteoarthritis, and gout. (R. at 307; Pl.'s Br. at 5.) On July 5, 2012, Plaintiff complained of a rash around her right elbow and left wrist, which Dr. Meredith diagnosed as osteoarthritis and gout. (R. at 323; Pl.'s Br. at 5.) In a report dated August 28, 2012, Dr. Meredith detailed unchanged diagnoses, findings, and limitations from those detailed in the previous questionnaire. (R. at 363; Pl.'s Br. at 5.)

### 3. Jerome Caiati, M.D.

Dr. Jermome Caiati completed an internal medicine examination of Plaintiff, at the Commissioner's request, on November 11, 2011. (R. at 296-99.) Dr. Caiati noted Plaintiff's

medical history included hypertension, gout, lumbosacral spinal stenosis, fibromyalgia, and chest pain. (R. at 296.) Dr. Caiati noted that Plaintiff was obese, in no acute distress, and that her gait and stance were normal. (R. at 297.) Dr. Caiati's examination revealed that Plaintiff had minimal difficulty walking on her toes and could squat two-thirds. (R. at 297.)

Dr. Caiati noted Plaintiff complained of gout pain, but there was no evidence of subluxations, contractures, ankyloses, or thickening and that Plaintiff's joints were stable and nontender, with no redness, heat, swelling, or effusion. (R. at 298.) Plaintiff did not show cyanosis, clubbing, or edema, no significant varicosities, or trophic changes and no muscle atrophy. (R. at 298.)

Dr. Caiati diagnosed Plaintiff with obesity, and noted that Plaintiff had a history of hypertension, gout, lumbosacral spinal stenosis, fibromyalgia, and chest pain. (R. at 298-99.) Dr. Caiati determined that Plaintiff had minimal limitation in bending due to low back pain, minimal limitations in climbing due to left ankle gout pain, minimal to mild limitation in lifting due to low back pain and left ankle pain, and no restrictions in sitting, standing, walking, reaching, pushing, or pulling. (R. at 299.)

### 4. Luis M. Zuniga, M.D.

State agency physician Dr. Luis M. Zuniga reviewed

Plaintiff's record and assessed her condition and limitations on
June 12, 2012. (R. at 230.) Dr. Zuniga noted that Dr. Meredith's
March 2012 report did not show that Plaintiff had significant
limitations. (R. at 230.) Dr. Zungia determined that Plaintiff's
degenerative disk disease, osteoarthritis, and obesity were severe
conditions, and that her fibromyalgia, hypertension, gout, and
goiter were not severe. (R. at 230.) In Dr. Zuniga's opinion,
Plaintiff could occasionally lift twenty pounds; frequently lift
objects up to ten pounds; stand or walk about six hours per day in
an eight hour day; sit for approximately six hours; frequently
balance, stoop, kneel, crouch, and crawl, and occasionally climb,
with unlimited pushing, pulling, and reaching, with no
manipulative or environmental limitation. (Def.'s Br., Docket
Entry 14, at 16; R. at 230 (affirming an earlier functional
capacity assessment).)

## II. Decision of the ALJ

After reviewing the evidence in the record, the ALJ
issued his decision on October 11, 2012, finding Plaintiff not to
be disabled. (R. at 25-30.) The ALJ concluded that while
Plaintiff's medically determinable impairments could reasonably be
expected to cause the alleged symptoms; Plaintiff's "statements
concerning the intensity, persistence and limiting effects of
[the] symptoms [were] not credible to the extent they are

inconsistent with the above residual functional capacity assessment." (R. at 28.)

The ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R 404.1567(b). (R. at 27.) The ALJ concluded that "[Plaintiff] is capable of performing her past relevant work as a school teacher . . . [which] does not require the performance of work-related activities precluded by the [Plaintiff's] residual functional capacity." (R. at 30.)

In reaching its decision, the ALJ accorded "little weight" to Dr. Meredith's opinion, a treating physician, because his opinion was "inconsistent with his examinations of the [Plaintiff] demonstrating fair to only slight decreased range of motion in the neck, shoulders, elbows, back, hips, and knees, no active synovitis in the hands or wrists, diagnostic imaging and testing, the [Plaintiff's] conservative course of treatment, and the findings of Drs. Caiati and Zuniga." (R. at 30.) The ALJ accorded "significant weight" to the opinion of Dr. Zuniga, because it was "consistent with the opinion of Dr. Caiati, diagnostic imaging and testing, treatment notes, and the [Plaintiff's] admissions." (R. at 30.) Finally, the ALJ accorded the "greatest weight" to the opinion of Dr. Caiati, who performed an evaluation of Plaintiff on behalf of the SSA because it was "supported by and

consistent with diagnostic imaging and testing, treatment notes, and the [Plaintiff's] admissions." (R. at 30.)

III. The Decision of the Appeals Counsel

Plaintiff petitioned the Appeals Council to review the ALJ's decision and submitted a letter attaching a Narrative Report dated December 20, 2012 from Joseph Cohn, M.D. and a Multiple Impairment Questionnaire dated December 17, 2012 from Joseph Cohn, M.D. (R. at 365-75.)

A.   Joseph Cohn, M.D.

Plaintiff was evaluated by Joseph Cohn, M.D., a Rheumatologist, on December 20, 2012. (R. at 365.) At that time, Dr. Cohen found that Plaintiff was suffering from the following ailments: hypertension, irritable bowel syndrome, reflux, anemia, L4-L5 left lumbar radiculopathy, hyperuricemia, and gout in the left ankle. (R. at 367.) He also found that there was evidence of cervical spondylosis, and fibromyalgia. (R. at 367.) With respect to Plaintiff's capacity to work, Dr. Cohen opined that Plaintiff "does appear to be disabled at the present time from full time physical activities" due to her medical problems. (R. at 367.) More specifically, Dr. Cohen explained that Plaintiff was "limited in her physical activities in terms of walking and sitting" because of her lower back and knee pain and limited in her arm movement because of "numbness in the left hand." Dr. Cohen also noted that Plaintiff had "chronic neck pain" and "joint pains"

in her knees and hands.  (R. at 367.)

On January 22, 2014, the Appeals Council denied Plaintiff's petition to appeal the ALJ's decision.  (R at 1-7.) The Appeals Council found that Dr. Cohn's report did not affect the ALJ's decision about whether Plaintiff was disabled on or before October 11, 2012, because the report was dated December 17, 2012.  (R. at 2.)  The Appeals thus "found no reason under our rules to review the Administrative Law Judge's decision."  (R. at 1.)  Therefore, the ALJ's decision is considered the final decision of the Commissioner.  (R. at 1.)

IV.  Procedural History

Plaintiff commenced this action on March 24, 2014. (Docket Entry 1.)  The Commissioner filed the administrative record and Answer on June 23, 2014.  (Docket Entries 7-9.)  The Commissioner moved for judgment on the Pleadings on September 23, 2014, (Docket Entry 13) and Plaintiff moved on October 23, 2014. (Docket Entry 15).  These motions are presently before the Court.

DISCUSSION

I.  Standard of Review

In reviewing the ruling of the ALJ, this Court will not determine de novo whether Plaintiff is entitled to disability benefits.  Thus, even if the Court may have reached a different decision, it must not substitute its own judgment for that of the ALJ.  See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991).

Instead, the Court must determine whether the ALJ's findings are supported by "substantial evidence in the record as a whole or are based on an erroneous legal standard." Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000) (internal quotations marks and citation omitted), superseded by statute on other grounds, 20 C.F.R. § 404.1560.  If the Court finds that substantial evidence exists to support the Commissioner's decision, the decision will be upheld, even if evidence to the contrary exists. See Johnson v. Barnhart, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003).  "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion." Id.  (citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.  Ct.  1420, 1427, 28 L. Ed. 2d 842 (1971)).  The substantial evidence test applies not only to the ALJ's findings of fact, but also to any inferences and conclusions of law drawn from such facts.  See id.

To determine if substantial evidence exists to support the ALJ's findings, this Court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences may be drawn." See Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (internal quotation marks and citation omitted).  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).

A.    Eligibility for Benefits

A claimant must be disabled within the meaning of the Social Security Act (the "Act") to receive disability benefits. See Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); 42 U.S.C. § 423(a), (d). A claimant is disabled under the Act when he can show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." Id. § 423(d)(2)(A).

The Commissioner must apply a five-step analysis when determining whether a claimant is disabled as defined by the Act. See Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); Petrie v. Astrue, 412 F. App'x 401, 404 (2d Cir. 2011). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must prove that he suffers from a severe impairment that significantly limits his mental or physical ability to do basic work activities. Id. § 404.1520(a)(4)(ii). Third, the claimant must show that his impairment is equivalent to one of the impairments listed in

Appendix 1 of the Regulations. <u>Id</u>. § 404.1520(a)(4)(iii). <u>Fourth</u>, if his impairment or its equivalent is not listed in the Appendix, the claimant must show that he does not have the residual functional capacity ("RFC") to perform tasks required in his previous employment. <u>Id.</u> § 404.1520(a)(4)(iv). <u>Fifth</u>, if the claimant successfully makes these showings, the Commissioner must determine if there is any other work within the national economy that the claimant is able to perform. <u>Id.</u> § 404.1520(a)(4)(v). The claimant has the burden of proving the first four steps of the analysis, while the Commissioner carries the burden of proof for the last step. <u>See</u> <u>Shaw</u>, 221 F.3d at 132; <u>Poupore v. Astrue</u>, 566 F.3d 303, 306 (2d Cir. 2009). "In making the required determinations, the Commissioner must consider: (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience." <u>Boryk ex rel. Boryk v. Barnhart</u>, No. 02-CV-2465, 2003 WL 22170596, at *8 (E.D.N.Y. Sept. 17, 2003) (citing <u>Carroll v. Sec'y of Health & Human Servs.</u>, 705 F.2d 638, 642 (2d Cir. 1983)).

Here, the ALJ performed the above analysis and found that Plaintiff had not engaged in substantial gainful activity since October 1, 2009, and that she had the following severe

impairments: fibromyalgia, osteoarthritis, hypertension, and gout. (R. at 27.) The ALJ next determined that none of Plaintiff's impairments or any combination of her impairments were the medical equivalent of any impairment enumerated in Appendix 1 of the Regulations. (R. at 27.) Thus, the ALJ found that Plaintiff was capable of performing her past work as a school teacher, as she had the RFC to perform a full range of light work. (R. at 27-30.) Plaintiff takes issue with the ALJ's final determination. Specifically, Plaintiff argues that (1) the ALJ did not follow the treating physician's rule with respect to Dr. Meredith and (2) the ALJ did not properly assess Plaintiff's credibility. (Pl.'s Br. at 7-15.) The Court will address these arguments in turn below.

A.    Treating Physician Rule

Plaintiff first argues that remand is required because the ALJ did not properly apply the treating physician rule to Dr. Meredith's medical opinions. (Pl.'s Br. at 7-12.) The Commissioner counters that the ALJ properly assigned Dr. Meredith's opinions "little weight." (Comm'r's Reply Br., Docket Entry 17, at 1-6.) Under the "treating physician rule," the medical opinions and reports of a claimant's treating physicians are to be given "special evidentiary weight." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). Specifically, the regulation states:

> Generally, we give more weight to opinions
> from your treating sources . . . . If we find
> that a treating source's opinion on the
> issue(s) of the nature and severity of your
> impairment(s) is well-supported by medically
> acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with the
> other substantial evidence in your case
> record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2) (alteration in original). When an ALJ

does not accord controlling weight to the medical opinion of a

treating physician, the ALJ "must consider various 'factors' to

determine how much weight to give to the opinion." Halloran v.

Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted); see

also Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y.

2008). These factors include:

> (1) the length of the treatment relationship
> and frequency of the examination; (2) the
> nature and extent of the treatment
> relationship; (3) the extent to which the
> opinion is supported by medical and laboratory
> findings; (4) the physician's consistency with
> the record as a whole; and (5) whether the
> physician is a specialist.

Schnetzler, 533 F. Supp. 2d at 286; see also 20 C.F.R.

§ 404.1527(d)(2); Halloran, 362 F.3d at 32. To comply with the

requirements of the treating physician rule ALJ must "set forth

her reasons for the weight she assigns to the treating physician's

opinion." Shaw, 221 F.3d at 134; see 20 C.F.R. § 404.1527; see

also Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (explaining

that "[a] claimant . . . who knows that her physician has deemed

her disabled, might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.")

Here, the ALJ did not violate the treating physician's rule because he articulated his reasons for giving certain doctor's opinions less weight. With respect to Dr. Meredith, the ALJ noted that Dr. Meredith's opinion was inconsistent with his own examinations of "the claimant demonstrating fair to only slightly decreased range of motion in the neck, shoulders, elbows, back, hips, and knees, no active synovitis in the hands or wrists, diagnostic imaging and testing, the claimant's conservative course of treatment, and the findings of Drs. Caiati and Zuniga." (R. at 30.) Moreover, in deciding that Dr. Meredith's opinions were not entitled to controlling weight, the ALJ considered the various factors, set forth in 20 C.F.R. § 404.1527, to determine how much weight to afford their opinions. (R. at 28.) Specifically, the ALJ found that Dr. Meredith's opinion was inconsistent with the medical tests performed on Plaintiff and Plaintiff's own admissions regarding her capabilities. (R. at 30.) Thus, the ALJ's decision did not violate the treating physician's rule.

B.   Credibility

Plaintiff also argues that the ALJ did not properly assess Plaintiff's credibility and that "[t]he ALJ's credibility determination is not supported by substantial evidence." (Pl.'s

Br. at 14.)  The Court disagrees.  Here, the ALJ found that although "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible . . . ." (R. at 28.)  As discussed below, the Court finds that there is substantial evidence in the record to support the ALJ's conclusion.

The Second Circuit has held that "the subjective element of pain is an important factor to be considered in determining disability." Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984). However, "[t]he ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." McLaughlin v. Sec'y of Health, Educ. & Welfare, 612 F.2d 701, 705 (2d Cir. 1980) (alteration in original) (internal quotation marks and citation omitted).  The Court will uphold an ALJ's decision discounting a petitioner's subjective complaints of pain, as long as the decision is supported by substantial evidence. See Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984).

Here, Plaintiff's subjective complaints were contradicted by other evidence in the record as well as Plaintiff's own testimony and behavior at the hearing.  Specifically: (1) Plaintiff testified that she stopped working because her job

ended--not because of a physical impairment (R. at 142);
(2) Plaintiff stated that she was able to perform a wide range of
activities, including: showering, eating meals, feeding her cat,
watching television, playing computer games, crocheting, and
reading.  (R. at 163-67.)  Moreover, Plaintiff's allegations of
disability are inconsistent.  Plaintiff testified that she does
not cook, clean, do laundry, or food shop.  In her Functional
Report however, she admitted that she is able to shower and dress
herself, cook, make her bed, and shop for food.  (R. at 163-67.)
These contradictions support ALJ's decision to discount
Plaintiff's subjective complaints.  See, e.g., Vargas v. Astrue,
No. 10-CV-6306, 2011 WL 2946371, at *15 (S.D.N.Y. July 20, 2011);
Shriver v. Astrue, No. 07-CV-2767, 2008 WL 4453420, at *2 (E.D.N.Y.
Sept. 30, 2008).

CONCLUSION

          For the foregoing reasons, Commissioner's motion (Docket
Entry 13) is GRANTED, the Plaintiff's motion (Docket Entry 15) is
DENIED.  The Clerk of the Court is directed to mark this matter
CLOSED.


                         SO ORDERED


                         /s/ JOANNA SEYBERT
                         Joanna Seybert, U.S.D.J.

Date: December __28__, 2015
      Central Islip, New York

23